IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BILLY PORTER**                                                                                              **PLAINTIFF**

v.                              CASE NO. 4:23-CV-00002-BSM

**DEPARTMENT OF VETERANS AFFAIRS**                                       **DEFENDANT**

## ORDER

The Department of Veterans Affairs' motion for summary judgment [Doc. No. 14] is granted. Billy Porter's age discrimination claims are dismissed without prejudice and his remaining claims are dismissed with prejudice.

## I. BACKGROUND

Porter is a black man who began working for the Department of Veterans Affairs ("VA") in 2013. Statement of Facts ¶¶ 1–2, Doc. No. 15 ("SOF"); Resp. SOF Ex. J at 2, Doc. No. 18-10. Porter worked as a supervisory contracting specialist, which required him to supervise employees, assign and review work, provide training and direction to his team, and monitor and report on the status and progress of work. SOF ¶ 35. At first, he supervised about sixteen employees in Little Rock. *Id.* ¶ 3. Later, Porter began supervising primarily employees in other states, but continued to supervise at least five employees in Little Rock until he retired in 2017. *Id.*; Deposition of Billy Porter 41:9–42:16, Doc. No. 15-1.

In October 2015, Porter applied for a promotion to division chief. SOF ¶ 38. Four other people applied for the position. *Id.* ¶ 39. Before the interviews, the VA compiled relevant information about each candidate, including federal contracting experience, supervisory experience, VA experience, and certification level. *Id.* ¶ 40. Each candidate was

interviewed by a panel of three people not in Porter's supervisory chain, who asked the candidate the same twelve questions, scored each interview, and invited the top two candidates to a second interview. *Id.* ¶¶ 39–42. Based on his interview score, Porter was not one of the top two candidates. *Id.* ¶ 42. A black woman and a white man advanced to the next round, and the white man ultimately got the job. *Id.* ¶ 43. Porter is not aware of any remarks or comments that make him believe the decision not to promote him was based on his age or disability status. *Id.* ¶ 45. But he asserts that a higher-ranking VA employee said that the person who received the job was a "better fit" for the role, which Porter views as a racist remark. *Id.* ¶ 46.

While Porter was working for the VA, his health issues began impairing his ability to do his job and he repeatedly requested an accommodation to work from home. *Id.* ¶¶ 5–6, 13–14, 19–20. He presented documentation from medical providers in support of this request. *Id.* ¶¶ 8, 16, 24. One provider advised that he was unable to sit, stand, or walk for long periods of time. *Id.* ¶ 8. Another specified that he was unable to stand for longer than ten minutes or walk for more than five minutes without pain, and that he could not sit too long either. *Id.* ¶ 16. A third provider stated that Porter had advised him that he was unable to lift, reach, walk up stairs, or drive. SOF Ex. 2 at 47, Doc. No. 15-2. That provider restricted Porter from "reaching, driving, climbing [stairs, presumably], [and] lifting with left upper extremity" for six weeks from the date of a December 23, 2015 surgery. *Id.* Porter's first two providers supported his request to work from home. The first opined that Porter's pain was affecting "his ability to perform at optimal level" at work and that he would be

2

more comfortable working from home, which would place less stress on his joints. *Id.* at 14. The second opined that working from home would reduce how far he needed to walk and make him more comfortable and productive. *Id.* at 20–21. The third provider's recommendations were only for Porter's recovery period. *Id.* at 47.

In response to Porter's first request for accommodation, the VA offered Porter an ergonomic workstation that would enable him to work while sitting or standing. SOF ¶ 10. Porter rejected that accommodation and renewed his request. *Id.* ¶¶ 11–12. The VA then offered an ergonomic assessment, a sit/stand workstation, hybrid telework five days per two-week pay period as long as Porter resided within commuting distance of the office, and leave for medical and physical therapy appointments in accordance with VA policy. *Id.* ¶ 17. After Porter rejected that proposed accommodation, the VA offered to relocate him to a first-floor office. *Id.* ¶ 28. The VA stated that these accommodations would reduce Porter's need to report to the office on a daily basis and allow him to perform his job either sitting or standing, to attend appointments, and to avoid stairs. *Id.* ¶¶ 10, 18; SOF Ex. 2 at 52.

Porter provided several reasons why working from home was the only accommodation acceptable to him. In his first renewed request, he stated that telework would "allow [him] to be in a location to obtain better medical care," and would provide needed flexibility. SOF ¶ 14. Porter rejected the VA's hybrid telework offer as inadequate because it would "not allow [him] to meet [his] medical and mental healthcare needs." SOF Ex. 2 at 24. He said this was the case because his medical care was located in San Antonio, making it impossible to attend his appointments while residing in Arkansas. *Id.* Porter proposed to telework full

3

time, three weeks per month in San Antonio and one week in Arkansas. *Id.* In communications with the EEOC, he said that the VA's proposed accommodations "did not address the impact his disabilities had on his abilities to perform other daily life activities, such as his ability to care for himself by preparing meals, bathing, and driving to and from his medical appointments." Resp. SOF Ex. C at 2, Doc. No. 18-3. He told the EEOC that he "required his family's assistance with these activities, which is why he requested to telework forty hours a week from San Antonio." *Id.* Nonetheless, the VA declined to allow him to work from home more than part time.

In early April 2016, Porter requested to take 168 hours of advanced leave, which exceeded the leave time he had accrued up to that point. SOF ¶¶ 47–48. The VA denied his leave request. *Id.* ¶ 49. Later that month, Porter requested 160 hours of advanced leave, which also exceeded his accrued leave. *Id.* ¶¶ 50–51. The VA again denied his request. *Id.* ¶ 52. At the time the VA denied Porter's leave requests, he had applied for disability retirement. SOF ¶¶ 49, 52; Resp. SOF ¶ 49. According to VA policy, annual leave should not be advanced to an employee when it is known or reasonably expected that the employee will not return to duty, for example, when the employee has applied for disability retirement. SOF ¶ 13; SOF Ex. 4 at 6. The VA noted that he had applied for disability retirement and denied both requests out of a concern that Porter might not return to duty or be able to earn the leave amount by the end of the remaining leave year. SOF ¶¶ 49, 52.

Porter's position required him to maintain a certain certification level. *Id.* ¶ 59. According to VA records, he needed to complete training by January 30, 2017 to prevent his

4

necessary certifications from expiring. *Id.* On February 2, 2017, Porter's supervisor asked him about uncompleted training hours. Porter responded that he planned to "leave the agency ASAP" and would not meet the requirement. *Id.* ¶ 61. So Porter was temporarily detailed to a position that did not require that certification level. *Id.* ¶ 62. After further review of his hours and certification requirements, the VA realized that Porter's certification was valid until October 2017. *Id.* ¶ 63. It reinstated him to his previous position on February 21, 2017. *Id.* Porter did not lose any salary or benefits from being transferred, but says it affected him mentally and negatively impacted his whole life. *Id.* ¶ 64; Resp. SOF ¶ 64.

Porter believes he was subjected to a hostile work environment based on his disability because a higher-ranking VA employee once asked Porter how he obtained his disability status and appeared skeptical that Porter was disabled enough to qualify for his rating. SOF ¶ 65; Resp. SOF ¶ 65. Porter also believes he was treated differently than others based on his race, but is not aware of any remarks or slurs made about his race. SOF ¶ 66. And according to Porter, some employees called him old man, but the comments were not made by higher-ranking employees and he did not report them. *Id.* ¶ 67. Finally, Porter's new supervisor gave him lower performance ratings than his previous supervisor had. Resp. SOF ¶ 70. The supervisor testified in an affidavit explaining his decision that Porter was "out of the office a number of hours/days during the rating period." Affidavit of Aaron Villalpando 17:8–22, Doc. No. 18-14. But Porter was never rated lower than "fully successful," which meant his salary and benefits were not reduced due to performance concerns. SOF ¶ 70.

Porter is suing the VA for race, age, and disability discrimination and for retaliation.

The VA is moving for summary judgment on all claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

A. <u>Rehabilitation Act</u>

Porter alleges that the VA failed to accommodate his disability, treated him worse because of his disability status, and retaliated against him for engaging in disability-related protected activity. Because he was a federal employee and is suing a federal agency, his claims are under the Rehabilitation Act rather than the Americans with Disabilities Act ("ADA"). *See Lewis v. Johanns*, 180 F. App'x 599, 601 (8th Cir. 2006). But cases interpreting the two acts employ the same analysis and are interchangeable. *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008).

*1. Failure to accommodate*

Summary judgment is granted on Porter's failure-to-accommodate claim because he has not shown that the VA failed to provide a reasonable accommodation. To prevail on this claim, Porter must establish (1) a prima facie case of discrimination based on disability and (2) a failure to accommodate his disability. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015).

To establish a prima facie case, Porter must show that he (1) is disabled; (2) is a qualified individual; and (3) has suffered an adverse employment decision because of the disability. *Id.* The VA does not dispute that Porter was disabled or a qualified individual. And an "alleged failure to accommodate is the adverse action" for purposes of the prima facie case. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 n.5 (8th Cir. 2006).

Although Porter has established a prima facie case of disability discrimination, summary judgment is proper because he has not shown that the VA failed to reasonably accommodate his disability. An employer must reasonably accommodate its employee's disability with respect to "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." *Howard v. City of Sedalia*, 103 F.4th 536, 538 (8th Cir. 2024) (cleaned up) (citing 29 C.F.R. § 1630.2(o)(1)). This regulation is "no less relevant to the interpretation of the [Rehabilitation Act]." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 120 (3d Cir. 2018); *see A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th

Cir. 2018) (similar); *see also Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998) (the ADA and Rehabilitation Act share the same "rights, procedures, and enforcement remedies"). Porter must therefore show that a reasonable accommodation letting him perform the essential functions of his job without imposing an undue burden on the VA is possible and that the VA failed to provide one. *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004).

Porter requested that the VA accommodate his disability by letting him work from home most or all of the time. To show that this accommodation was reasonable, he presents evidence that he supervised most of his subordinates remotely already and that the VA let multiple other supervisors work from home on an ad hoc basis. Resp. Mot. Summ. J. 3–7, Doc. No. 19. The VA argues that Porter could not perform essential functions of his position while working from home—assigning and reviewing work, providing training, and monitoring and reviewing the status of work progress. Br. Supp. Mot. Summ. J. 16, Doc. No. 16. Porter has created an issue of fact as to whether he could effectively perform these functions from home because he did not work in person with most of the employees the VA assigned him to supervise. *See Mobley v. St. Luke's Health Sys., Inc.,* 53 F.4th 452, 456 (8th Cir. 2022) (employer "demonstrated a belief that [plaintiff] could perform his essential job functions without being in the office" by letting him work from home consistently).

Although the parties dispute whether Porter could adequately perform his job from home, this dispute is not material because the VA was not required to give Porter the "specific accommodation" he requested or preferred, but only to offer him a reasonable accommodation. *See Scruggs v. Pulaski Cnty.*, 817 F.3d 1087, 1093 (8th Cir. 2016). The

8

VA clearly engaged in an interactive process with Porter, offering him multiple accommodations. *See supra* § I. Summary judgment is appropriate because the VA's proffered accommodations were reasonable and allowed Porter to perform the essential functions of his job. Porter's disabilities prevented him from sitting or standing for long periods of time—the VA offered an ergonomic workstation at which he could stand or sit. SOF ¶¶ 8, 10. Porter could not walk far without pain and needed flexibility to attend appointments—the VA offered telework half of every pay period and leave to attend appointments. *Id.* ¶¶ 16–17. Porter had trouble navigating stairs—the VA offered an office on the first floor. *Id.* ¶ 28; SOF Ex. 2 at 47. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir. 1999) (employer has "ultimate discretion" to choose between accommodations that "allow the individual to perform the essential functions of the position") (citation omitted).

It is true that the VA did not accommodate Porter's request to work from San Antonio where his medical care was based and family members who cared for him lived. The VA, however, was not required to do so because permitting Porter to live close to his preferred medical providers and family members in San Antonio was not related to his ability "to perform the essential functions of his job." *Howard*, 103 F.4th at 540; *see Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 878 (10th Cir. 2021) (holding employer not required to accommodate disabled employee's requested accommodation for her transportation barrier because it was "a problem she faces outside the workplace unrelated to an essential job function or a privilege of employment"); *see also Hustvet v. Allina Health Sys.*, 910 F.3d

399, 410–11 (8th Cir. 2018) (plaintiff's request to avoid vaccine because of her history of seizures and slight risk that vaccine could cause seizure was not reasonable accommodation because it did not "relate[] to her purported disability in a meaningful way"); *Peebles*, 354 F.3d at 769 (plaintiff's request to retain job he was reassigned to because of his disability when senior employees sought the position was not reasonable accommodation because it was "not necessitated" by his disability).

Porter has presented no evidence that he was unable to obtain adequate medical treatment, home care, or transportation if he lived within commuting distance of his Arkansas office. Consequently, whether an inability to do so would affect this analysis is not addressed.

### 2. *Disparate treatment*

Summary judgment is granted on Porter's disparate treatment claim because he has not shown that the VA treated him worse because of his disability. Because Porter has not presented direct evidence of discrimination based on his disability, he must establish a prima facie case of discrimination to survive summary judgment. This requires him to show that he: (1) was disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of the job; and (3) suffered an adverse employment action because of his disability. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016). If Porter does so, the VA has the burden of providing a legitimate, nondiscriminatory reason for its adverse action. If it does, the burden shifts back to Porter to show that the proffered reason was really a pretext for discrimination. Porter argues that the VA treated him worse because of

his disability when it gave him a lower performance ranking, transferred him to another position, and denied his requests for advanced leave.

The VA does not appear to dispute that Porter was disabled or a qualified individual, but it argues that these actions were not adverse. "[N]ot everything that makes an employee unhappy is an actionable adverse action," *Buboltz*, 523 F.3d at 868, but the claimed injury need no longer "be 'significant,' 'material,' or 'serious.'" *Cole v. Grp. Health Plan, Inc.*, — F.4th —, No. 23-3050, 2024 WL 3217580, at *2 (8th Cir. June 28, 2024) (quoting *Muldrow v. St. Louis*, 144 S. Ct. 967, 975 n.2 (2024)). Instead, Porter must show only that the action in question "brought about some disadvantageous change in an employment term or condition." *Muldrow*, 144 S. Ct. at 974 (cleaned up). The lower performance ranking was not an adverse employment action because Porter has not shown that it disadvantaged him. The transfer and denied leave requests pose closer questions. With respect to the transfer, Porter has presented evidence that the VA denied him notice and an opportunity to respond before transferring him, that it cut him off from coworkers, and that he was embarrassed by it. Resp. SOF Ex. L at 22:13–19; 25:18–26:5, Doc. No. 18-12. Additionally, the position he was given required fewer qualifications, although his salary and benefits did not change. *Id.* at 21:11–21; SOF ¶ 64. These negative consequences resulting from the transfer appear to qualify it as an adverse employment action. *See Muldrow*, 144 S. Ct. at 977 (transfer was adverse action when it left plaintiff "worse off," even if not "significantly so"). It is less clear that denial of leave constitutes an adverse employment action, *see Box v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006), but it is assumed, without deciding, that it does.

11

Although Porter has made out a prima facie case of discrimination, the record shows that the VA had legitimate, nondiscriminatory reasons for its actions. When it transferred Porter, the VA believed, based on incorrect records, that he had allowed the certification he needed for his position to lapse. *See* Resp. Mot. Summ. J. 8; SOF ¶¶ 59–63; Resp. SOF Ex. K at 9:14–10:19, Doc. No. 18-11. And when it denied Porter's request for advanced leave, the VA followed its policy of not advancing annual leave to employees it knew or reasonably expected would not return to duty, including those who had applied for disability retirement. SOF ¶¶ 13, 47–52; SOF Ex. 4 at 6; Resp. SOF ¶ 49.

Porter has not shown that either of these proffered reasons is pretextual. He has not presented any evidence as to the transfer. With respect to the leave denial, Porter told the reviewing officials that he would have enough time to earn back the leave because his retirement would not be approved for four to twelve months. Resp. SOF Ex. G, Doc. No. 18-7. But he has produced no evidence of an exception for that circumstance. Therefore, he has failed to create an inference that the VA's reasons were pretextual. *See Adkins v. Univ. of the Ozarks*, 262 F. Supp. 3d 791, 798 (W.D. Ark. 2017) ("Showing that a defendant's proffered reason is pretext for an unlawful purpose involves clearing a high bar under Eighth Circuit precedent.").

### 3. Retaliation

Summary judgment is granted on Porter's retaliation claim because he has not shown that his protected activity was the but-for cause of any adverse employment actions he experienced. To establish a claim for disability-related retaliation, Porter must show (1) that

he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) a but-for causal connection between the protected activity and the adverse action. *Oehmke*, 844 F.3d at 758. The parties agree that Porter engaged in protected activity by requesting accommodations, filing EEOC claims, and submitting grievances. Br. Supp. Mot. Summ. J. 20; Resp. Mot. Summ. J. 10. It is assumed, consistent with the analysis in the previous section, that Porter experienced adverse employment actions when the VA transferred him and denied his leave requests. He has not, however, shown that his protected activity was the reason for those adverse actions. The only evidence Porter presents is that the decision makers were aware of his protected activity and (with respect to the leave denial) he told them that he would not be retiring for four to twelve months. Resp. Mot. Summ. J. 10–11. Without more, such as "close temporal proximity between the protected activity and [adverse actions]," this is not sufficient to create a genuine issue of fact that one occurred because of the other. *Lissick v. Andersen Corp.*, 996 F.3d 876, 883 (8th Cir. 2021).

    B.    <u>Title VII/Arkansas Civil Rights Act</u>

Title VII and the Arkansas Civil Rights Act ("ACRA") prohibit employment discrimination based on race and other protected characteristics. Porter argues that the VA discriminated against him because of his race and age by denying him a promotion in favor of a younger white man and creating a hostile work environment. But neither statute prohibits age discrimination, and he has not brought any claims under the Age Discrimination in Employment Act ("ADEA"). *See Morrow v. City of Jacksonville*, 941 F. Supp. 816, 826 (E.D. Ark. 1996) (age not protected class under ACRA); *Newkirk v. GKN*

*Armstrong Wheels, Inc.*, 168 F. Supp. 3d 1174, 1186 n.6 (N.D. Iowa 2016) ("Title VII does not provide a remedy against age discrimination . . . the ADEA is the exclusive federal judicial remedy for claims of age discrimination in employment."). Therefore Porter's age discrimination claims are dismissed without prejudice.

### 1. *Denial of promotion*

Summary judgment is granted on Porter's claim that the VA failed to promote him based on his race because he has not shown that the VA's reason for hiring another candidate was pretextual. Porter has made out a prima facie case of race discrimination because he is black, he was qualified for and applied for a promotion for an available position, he was rejected, and a white employee was promoted instead. *See Dotson v. Delta Consol. Indus., Inc.*, 251 F.3d 780, 781 (8th Cir. 2001). The burden thus shifts to the VA to articulate a legitimate, nondiscriminatory reason for its decision. The VA has done so: it conducted a standardized interview process in which pre-interview information about each candidate was compiled and a panel of interviewers not in Porter's supervisory chain asked five candidates the same twelve questions, scored each interview, and advanced the top two candidates to a second interview. SOF ¶¶ 39–42. Based on his interview score, Porter was not one of the top two candidates, but a black woman was. *Id.* ¶¶ 42–43.

The burden thus shifts back to Porter to show that this reason was a pretext for race discrimination. To demonstrate pretext, he must show that the VA promoted an applicant who was less qualified than him. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 796 (8th Cir. 2019); *see Torgerson v. City of Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011) (plaintiff

14

must be "clearly" or "significantly" better qualified than candidate selected to support finding of pretext). Porter points out that he had more education and experience than the white man who received the promotion. Resp. Mot. Summ. J. 12. But the record shows that Porter was scored lowest by two of the three interviewers and was not one of the top two candidates overall, while the white man was scored highest by two of the three interviewers and was one of the top two candidates. Porter Dep. 92:14–93:24. Given that the successful candidate possessed the necessary qualifications and performed better than Porter in a standardized interview, Porter has not shown that the VA's decision was pretextual. *See McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (no pretext when interview panel hired candidate it unanimously rated more highly than plaintiff and who demonstrated "superior communication skills" in an impartial interview process, although she had less experience).

### 2. Hostile work environment

Summary judgment is granted on Porter's hostile work environment claim because he has not shown he was subjected to unwelcome harassment based on his race or disability status that was sufficiently severe or pervasive to create a hostile work environment. To establish this claim, Porter must show that: (1) he belonged to a protected group; (2) he was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and his protected status; and (4) the harassment affected a term, condition, or privilege of employment. *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012).

Porter's racially hostile work environment claim fails because his only evidence of harassment even plausibly connected to his race is the drop in his performance rating from

"excellent" to "fully successful," Resp. SOF ¶ 70, but he has provided no authority to suggest that a mere change to his performance rating could constitute harassment.

Porter's hostile work environment claim based on his disability fails because the alleged harassment was not sufficiently severe or pervasive. Title VII does not prohibit harassment based on a disability, *Baez v. New York*, 56 F. Supp. 3d 456, 469 (S.D.N.Y. 2014), but the ACRA appears to. *See Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002) (disability claims under ACRA analyzed under same principles as ADA claims); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003) (ADA permits hostile work environment claims). As evidence that he was harassed based on his disability, Porter points to a conversation in which his supervisor expressed skepticism of his disability rating, his decreased performance rating, and a comment by another supervisor about his frequent absences from the office. Resp. Mot. Summ. J. 13–15. As noted in the preceding section, however, the mere drop in Porter's performance rating is not harassment. The comment about his absences was made to an EEOC investigator, Villalpando Aff. at 17:8–22, but even assuming it, or the disability-skeptical remarks, constituted harassment, they were "isolated incidents" and not sufficiently severe or pervasive to alter the conditions of Porter's employment. *See Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015) (holding that two incidents in four years of offensive conduct in which the plaintiff's manager yelled at

him and acted violently did not support hostile work environment claim).

    IT IS SO ORDERED this 12th day of July, 2024.

                                                         /s/ Brian S. Miller
                                                      UNITED STATES DISTRICT JUDGE